## 9195

### GONZALES *ET AL.* v. TERRY *ET AL.*

#### (86 S. E. 207.)

Vessels. Specific Performance of Contract to Purchase. Sales. Jurisdiction. Appeal and Error. Findings of Fact.

1. Vessels—Sales—Jurisdiction.—Where plaintiffs brought an action in a State Court to obtain specific performance of a contract for sale of vessels and all other assets of a steamboat company, alleging readiness to perform and part performance on their part, and

defendant answered denying such part performance, and readiness to perform, and interposed a counterclaim for recovery of moneys advanced by them upon the contract, and participated without objection in the trial of the action in that Court, they will be held to have waived any objection to the method of trial or jurisdiction of the Court.

2. CONTRACTS—SPECIFIC PERFORMANCE—JURISDICTION.—Where a contract recites the existence of certain claims and their amount against vessels to be sold, and provides for their payment and discharge, the parties thereto cannot object to the jurisdiction of the State Court in an action to enforce such contract, on the ground that an exercise of admiralty jurisdiction is necessary to determine the amount of such claims.

3. APPEAL AND ERROR.—Findings of fact on Circuit affirmed.

4. SHIPPING—SALES—MISREPRESENTATIONS—EVIDENCE.—In an action for the purchase price of two steamers and certain contract rights, evidence *held* insufficient to show misrepresentations as to the condition of the steamers or as to the nature of the contracts.

5. SHIPPING—TRANSFER OF VESSELS—MODE.—An agreement for the sale of steamships coupled with actual delivery transfers complete title subject to the rights of creditors.

6. SHIPPING—SALES—ACTIONS—EVIDENCE.—In an action for the purchase price of vessels agreed to have been sold free from lien, evidence *held* to show that they were not subject to liens.

Before HON. C. J. RAMAGE, special Judge, Columbia, December, 1914. Affirmed.

Action by Ambroze E. Gonzales and New York, Columbia and Georgetown Steamship Company against F. S. Terry, G. A. Guignard and T. C. Williams.

The facts are stated in the Circuit decree, which was as follows:

1. The complaint alleges that the plaintiff, New York, Columbia and Georgetown Steamship Company, is a corporation duly organized under the laws of the State of South Carolina, and has been engaged in the operation of a line of steamboats from the city of Columbia to the city of Georgetown, in said State, and that having become financially embarrassed, executions were issued against its property, and two steamboats owned by it, viz., the "City of

Columbia" and the "Annie G," were levied upon and sold and were bought by the plaintiff, Ambrose E. Gonzales, who became thereby the absolute owner of said boats, but that the corporation continued to own the franchise for the operation of the boat line between the two said cities and to hold certain contracts with the Clyde Steamship Company and with the Baltimore and Carolina Steamship Company for the interchange of freight.

2. That on the 11th day of April, 1913, the plaintiffs, Gonzales and the corporation, for valuable consideration, entered into a contract in writing with the defendants for the sale and delivery to the said defendants of the said steamships and other rights, franchises, etc., for the operation of said boats, of which contract a copy was attached to the complaint, marked "Exhibit —," whereby the defendants agreed to pay for said steamboats and other rights $7,500 within sixty days from said 11th day of April, 1913; and that in pursuance of said contract the plaintiffs did immediately after the execution of said contract deliver to the said defendants the said steamboats, contracts and all other assets of the corporation, free from liabilities or encumbrances of any character whatsoever, and the defendants thereupon commenced to operate the line of boats, and had continued to operate the same, and were still operating the same at that time. That they had paid $3,000 on account of the purchase price, but now refused upon demand to pay the balance, $4,500, with interest from the 11th day of April, 1913, which they should in law and equity do. That the plaintiffs had offered to convey the said steamboats and all other rights and franchises contemplated and covered by said contract by good and sufficient bills of sale and other instruments to the said defendants, and were then ready and willing so to do, and at all times were willing and ready to perform all stipulations of said agreement.

3. For a first defense the answer denies the allegations of the complaint, except as to the incorporation of the corpora-

tion plaintiff. For a second defense it alleged that the agreement referred to in the complaint provided as a condition precedent for the performance of the contract by the defendants that plaintiff, Gonzales, should furnish 'the defendants "with a good and marketable title to the steamboats 'Annie G' and 'City of Columbia' free of all encumbrances and liabilities whatsoever," and that by reason of his having purchased said boats at sheriffs' sales under executions issued to satisfy judgments obtained in the Court of Common Pleas for Richland county in an action against the New York, Columbia and Georgetown Steamship Company, then the owners of said boats, upon its promissory notes; and inasmuch as the New York, Columbia and Georgetown Steamship Company for several years prior to said sale had been operating said steamboats over navigable waters of the United States, said boats were subject to liens upon claims held by materialmen for supplies, repairs and other necessaries, and by seamen for their wages, and by patrons for merchandise lost and damaged while in its possession, and that said company while operating said line of steamboats had incurred obligations with various persons and become indebted for material and labor furnished for repairs, and also for supplies furnished said boats and for the wages of its seamen and for merchandise lost and damaged while being transported by said boats, amounting in the aggregate to a considerable sum, which had not been discharged and paid, and that, therefore, the title to the boats were not "marketable and free from encumbrances and liabilities of every character." For a third defense it was pleaded that the contract had stipulated for the delivery of the said boats and other assets of the corporate plaintiff free from liabilities and encumbrances within sixty days from the date of said agreement, together with an assignment of certain contracts for interchange of business with the Clyde Steamship Company and the Baltimore and Carolina Steamship, and that the plaintiffs had failed and were unable within sixty

days from the date of said contracts and still were unable to deliver said boats, contracts, etc., free of encumbrance and liabilities, and the defendants "had made other arrangements and supplied their needs from other sources."

For a fourth defense they allege that the plaintiff, Gonzales, "acting upon information and reports received by him and in good faith represented and warranted the 'City of Columbia' to be in good condition, and that by the expenditure of a reasonable sum of money in repair the 'Annie G' could be made serviceable and fit for the purpose for which these defendants proposed to make of it;" and that upon the faith of said representation and warranties made by the said Gonzales upon the said boats these defendants executed said agreement without having examined said boats, and that when they did examine them they found the "City of Columbia" to be defective and the "Annie G" to be worthless and the money necessary to repair its hull, to equip it with new engines and boilers and other necessaries would be equal in price to a new vessel of the same type and tonnage, and that although said Gonzales had make said representations and warranties in good faith, yet they were material and the defendants acted upon them and that it would be inequitable to require them to perform the contract, and allege that although the corporate plaintiffs had agreed to assign to the defendants the contracts with the Clyde Steamship Company and with the Baltimore and Carolina Steamship Company, with the approval of said companies, it had failed and neglected so to do. As a fifth defense, by way of counterclaim, it alleged the lending to Gonzales of $3,000 upon a contract to refund the same if good title could not be made to the boats.

I have been particular in stating the issues of the pleadings, as by them the rights of the parties must be determined.

Upon a notice duly served by the counsel for the plaintiffs and accepted by counsel for the defendants, the cause was

referred to the master to take testimony and report the same to the Court upon all of the issues arising upon the pleadings in said cause. No objections were made to the granting of this order. It was stated in open Court upon the hearing of the cause that counsel for defendants had not consented to the order, but had made no objection to its being granted. Under that order numerous references were had before the master and much testimony was taken. There was no objection made at any of the hearings before the master to proceedings under the order.

The cause came up before me in open Court on the 9th day of December, 1914, and trial was proceeded with. Nothing was said as to any objection to a trial without jury. The further hearing of the cause, however, was postponed after about half of the evidence had been read, until the afternoon of Wednesday, the 16th of December. After carefully considering the testimony and considering the issues involved and the arguments which had been submitted in writing, I intimated that I would hear further from counsel for the defense and indicated the line of my thought on the subject, whereupon counsel for the defense stated that if relief was to be granted upon the theory that the contract had already been performed on the part of the plaintiffs and that the money was due by the defendants there had not been a proper trial of the cause, but they were entitled to have a trial by jury. I at once ruled that having gone into the Court upon the method of trial and taken their chances, they could not for the first time after learning of the danger of loss disclaim their action and demand another trial. I, therefore, feel that I have jurisdiction to grant any relief consistent with the facts alleged and proven in the cause. I find the following facts:

1. The New York, Columbia and Georgetown Steamship Company had for a number of years been operating a line of steamboats between the cities of Columbia and Georgetown, both within the State of South Carolina, the line of

travel being entirely within that State, the city of George-
town, however, being on tide waters. The operations, how-
ever, had not been successful, and the affairs of the company
had been badly managed and the company was at the time
of the contract hereinafter mentioned insolvent. The plain-
tiff, Gonzales, was the president of the company, but knew
little or nothing about its operations or its affairs. This
seems to have been well known to all of the defendants.

2. That amongst the debts of the corporation at the time
of the contract above referred to, to wit, the 11th of April,
1913, were sundry bills and claims of a character which
could "libel the boats;" that is to say, which were given liens
under the laws of the United States and of South Carolina
upon the boats. These claims were at that time estimated
to be about $3,000. In addition to these claims there was a
claim by the former captain of one of the boats which was
roughly stated to have been about $400, but which the evi-
dence shows was subsequently agreed to be settled on the
basis of $200. There was also a claim by Mr. Hamby, gen-
eral manager of the corporation, for arrears of salary, claim
amounting to about $400. There is some evidence also that
there was a claim by some insurance company in the city of
New York against the corporation for arrears of insurance
premiums. This amounted to several hundred dollars.
Besides these classes of claims the evidence only shows that
the corporation was indebted to the plaintiff, Gonzales, for
funds which he had advanced out of his own pocket to pay
off certain claims of a character which could libel the boat,
and to him and Director Murray for $2,000, which they had
paid as endorsers on a note of the corporation for money
borrowed, and to the plaintiff, Gonzales, Murray and five
other of the directors on a note for $3,500 which they had
endorsed for money borrowed by the corporation and which
had been paid out by them. The statement as to the
amounts due upon these claims is not intended to be entirely
accurate.

3. In view of these conditions, the contract of April 11, 1913, was entered into by the plaintiff, Gonzales, in his individual capacity, and by the corporation, Mr. Gonzales, as president of the company, signing the contract in the name of the corporation. This was openly done and this action has been brought against the corporation by counsel who are legal practitioners and officers of this Court. It has been openly conducted and has extended down for something more than a year. The answer was filed by the defendants on the 16th of September, 1913. It must be presumed, therefore, that the contract was executed and the action brought with full knowledge of the board of directors and with their approval.

4. Under these conditions, on the 10th of April, 1913, after extended negotiations the parties met in the office of Mr. Gonzales and tentatively agreed to the terms of a contract. A memorandum of that supposed agreement was prepared by counsel for Mr. Gonzales and the corporation and submitted to Mr. Williams on behalf of the defendants, it being stated at the time that Mr. Williams was well acquainted with the requirements of maritime law governing the sale of boats and with matters concerning navigation, while Mr. Gonzales was himself ignorant of such matters. Mr. Williams took the draft of the agreement to his office and the next morning reported to Mr. Lyles, counsel for Mr. Gonzales and the corporation, a different scheme for settlement of the contract, but which was supposed to carry out substantially the terms as evidenced by the memorandum prepared by Mr. Lyles the night before. Mr. Lyles thereupon wrote a note to Mr. Gonzales to the effect that if the purchasers preferred the form of agreement which they had prepared, together with a letter appointing Mr. Williams as general manager of the company, it would be proper for the papers to be so executed, as they would accomplish practically the same thing. Under the rules of law to the effect that a written memorandum of an agree-

ment which purports to be final in its character is conclusive evidence of all matters that were discussed in connection with the contract and memorandum prepared by Mr. Lyles of April 11th, can have no effect where the papers subsequently executed are themselves clear, but if they are doubtful of import, or, being separately executed, if they do not in express terms cover all points that memorandum may be referred to. This is particularly true with reference to the appointment of Mr. Williams as general manager of the plaintiff corporation. The letter appointing him was prepared by Mr. Williams. No copy of it seems to have been retained by Mr. Gonzales and the letter itself seems to have been lost from the testimony offered by the defendants. What its exact purport was, therefore, is not before the Court in writing, and it is proper to refer to the memorandum and other oral evidence to ascertain what the object was in appointing Mr. Williams general manager.

2 The memorandum of April 10th, besides reciting the ownership of the steamboats in question and the line of their traffic in the language in which the same recital is made in the agreement of April 11th, also recited that upon executions duly issued upon certain judgments recovered against the corporation the steamboats referred to were levied upon and sold by the sheriffs of Richland and Georgetown counties and at such sales were purchased by the plaintiff, Gonzales, in his individual name and for his own benefit, subject, however, to certain claims "not exceeding $3,000 in amount," held by sundry persons against either or both of the said boats for such supplies or services as would entitle the holders of said claim to issue libels against the said boats for the payment thereof in priority of the indebtedness of the corporation itself. The contract of date, the 11th of April, finally executed contained precisely the same recitals, except the statement as to the amount of the claims put above in quotations. The memorandum of April 10th further recited

that the defendants had contracted to purchase the boats, together with "the existing contracts of the New York, Columbia and Georgetown Steamship Company with the Clyde Steamship Company and Baltimore and Carolina Steamship Company for the interchange of freight," at the price of $7,500, "as soon as the said two steamboats can be delivered free of liability and encumbrance of every character and the said contract can be assigned with the approval of the Clyde Steamship Company and the Baltimore and Carolina Steamship Company." This last recital was entirely left out of the agreement of April 11th. The memorandum of April 11th then proceeded, that the defendants agreed to advance at once so much money, not exceeding $3,000, as would be sufficient to pay off all existing claims upon which libels could be issued against the boats or either of them, or which might constitute liens upon the said boats, or either of them, in the hands of Gonzales, and that the plaintiff corporation should forthwith resume the operation of said boats, the titles of said boats, however, being and continuing in the said Terry, Guignard and Williams pending the final performance of the contract or its total failure, as thereinafter stipulated. The fund so furnished was to be by the defendants applied to the extinguishment of said debts and the boats to be operated by T. C. Williams, or such person as might be named by a majority of the three purchasers in the name of the plaintiff corporation, and also to keep up its franchises and contracts until the final determination of the agreement. The memorandum then proceeded that the plaintiffs were in the meantime, and as speedily as possible, to obtain from the Clyde Steamship Company and the Baltimore and Carolina Steamship Company their consent to the assignment of existing contracts with the said company so that the same might be continued in the name of "such company as the said F. S. Terry, G. A. Guignard and T. C. Williams" might name; and that thereupon, upon the delivery of the assignment of such contracts with such consent

and the proper proof that the said statements were free from any lien or encumbrance whatsoever, and that the said Terry, Guignard and Williams, or such corporation as they might name and transfer the said boats to, were properly seized and possessed of the same, the said Terry, Guignard and Williams should pay over the sum of $7,500 to be applied by the plaintiff, Gonzales, to the discharge of all of the floating indebtedness of the plaintiff corporation, whether held by him or other parties, and then the balance to be paid to the endorsers of certain notes against whom judgment had been rendered in the case of the Palmetto National Bank *v.* the corporation and others in proportion to the amount paid out by the said endorsers under the judgment in said action.

The contract executed by the parties on the 11th of April stipulated that the corporation and Gonzales "have agreed to sell and do sell" to Terry, Guignard and Williams the said boats, together with the existing contracts of the corporation with the other steamboat companies for the interchange of freight, and all other assets of the plaintiff corporation for $7,500.00, and that the said plaintiffs agreed to deliver to the said Terry, Guignard and Williams the said two steamboats and other assets of the corporation free from liability and encumbrances of every character within sixty days from the agreement, together with an assignment of said contracts with the approval of the Clyde Steamship Company and the Baltimore and Carolina Steamship Company. The plaintiffs then acknowledged the receipt of $100.00 as part payment of the purchase price, as stated. The contract then proceeded, that Terry, Guignard and Williams "have agreed to purchase, and do hereby purchase, the two boats, together with the existing contracts between the New York, Columbia and Georgetown Steamship Company and the Clyde Steamship Company and Baltimore and Carolina Steamship Company and all other assets of the said New York, Columbia and Georgetown

Steamship Company at and for the price of seventy-five hundred ($7,500.00) dollars, and they further agree to pay said sum of seventy-five hundred ($7,500.00) dollars within sixty days from the date hereof upon delivery to them of the boats, contracts and other assets of the New York, Columbia and Georgetown Steamship Company free from liabilities or encumbrances of any character whatsoever." In connection with said contract the plaintiff, Gonzales, executed a receipt for $3,000.00 to Terry, Guignard and Williams to enable him to pay off certain existing claims upon which libels could be issued against the boats and to fulfill the agreement made that day between the plaintiffs and the said Terry, Guignard and Williams, which was attached to said receipt. He further agreed that if within sixty days satisfactory conveyance of the said property could not be made to them he would refund to them the said $3,000.00, but that if satisfactory conveyance of the property was made to them the $3,000.00 so advanced was to be considered as part payment of the purchase price. As a matter of fact, the $100.00 recited in the agreement itself was not paid. The only amount of money passing was the $3,000.00 last referred to.

5. I find as a fact that the letter appointing Mr. Williams as general manager of the plaintiff corporation was signed by Mr. Gonzales as president on the 11th or 12th of April, 1913, and that this action was taken for the purpose of enabling the defendants to have the boat line operated for their benefit, but in the name of the plaintiff corporation to avoid personal liability on their part for the operation of the line pending the time that they could organize a new corporation. This is shown distinctly by the memorandum of April 10th, by the testimony of Mr. Guignard himself, by the letter of Mr. Williams as general manager to Mr. Gonzales, asking for the books of the company, by the testimony of Mr. Graham, a witness offered on behalf of the defendants, and by the testimony of Mr. Williams himself.

His appointment as general manager of the company was in effect the giving of full authority to him to take charge of all the assets of the company for the benefit of the three purchasers.

6. I find that the boat, the "City of Columbia," was actually delivered to the defendants on the 12th day of April, 1913. The testimony of Gonzales is that it was the intention so to deliver. The testimony of Mr. Graham and of Mr. Williams is to the effect that they took charge of that boat on that day and that they commenced to operate it on that day for the benefit of the new purchasers, although they did continue to operate it in the name of the plaintiff corporation. There is no testimony before the Court to show any representations made by Mr. Gonzales as to the condition of the "City of Columbia," and there is no express warranty shown. Mr. Gonzales denies that any such representations were made. Mr. Guignard admits that no such representations were made. Mr. Terry does speak in general terms of not having found the "City of Columbia" in the condition in which she was represented to be by Mr. Gonzales, and Mr. Graham testifies that some repairs had to be made to her sides on her trip to Georgetown, but no one undertakes to say what was represented as to her condition, nor does any one undertake to say that the repairs were of a serious nature. The boat, according to the testimony, was operated for some time in the name of the New York, Columbia and Georgetown Steamship Company, but after the organization of the new company by the defendant it was operated in the name of that company. The testimony of Mr. Graham shows this distinctly. There is no allegation as to what would have been a sound price for the "City of Columbia" or the "Annie G," or the other assets of the corporation, and that the price paid, $7,500.00, would have been a sound price for the boats if in first-class condition. Therefore, there is nothing before the Court upon which a breach of implied warranty could be based. As

to the "Annie G" it is shown in the answer that she was
known to be out of commission and in need of repairs to
her hull at the time of the sale.   Mr. Williams in his testi-
mony shows that the purchasers found the "Annie G"
"anchored out in the harbor" of Georgetown.  He says,
page 46: "I began operating the 'City of Columbia;' the
'Annie G' was out of commission. * * * We operated under
the name of the New York, Columbia and Georgetown
Steamship Company." * * * Then as to the "Annie G" he
says: "She was lying up on a mud flat.   She had been
anchored out in the harbor, but we had to keep two men as
watchmen and we found that she could not keep the water,
so she had been carried to a mud flat on Bridgman's ship-
yard."   He then testified that after examination he con-
cluded that it would be better to buy a new boat rather than
make the repairs necessary.   He does not undertake to
testify that there were any representations made by Mr.
Gonzales as to the condition of the "Annie G" further than
that she was in need of repairs and that it had been repre-
sented to Mr. Gonzales by Mr. Lachicotte, of Georgetown,
that she could be put in first-class condition so that she could
pass inspection for two years for about $2,000.00, but he
subsequently advised Mr. Terry and Mr. Guignard that it
would cost more to put the "Annie G" in shape than she
was worth, his experience being that when you sent a boat
to the ways for repairs it always costs, certainly would cost,
fully half again the total of what it was estimated when she
was put upon the ways.   He does not undertake to say that
Mr. Lachicotte had not so estimated the cost.   I therefore
find that the "Annie G" was so delivered to the defendants
shortly after the 12th of April, when Mr. Williams arrived
in Georgetown and had her taken to the Bridgman's ship-
yard.   As to the claims of the old company for freights or
other sums due it, there is no evidence offered by the
defendant to show that they were of any considerable
amount or that they undertook to collect the same, which

could have been done in the name of the old company by
Mr. Williams as general manager, and should have been
done, but, on the contrary, Mr. Graham testifies that the
customers of the old company were all informed that they
did not care to have anything to do with such matters prior
to the 12th of April, when the new operations began. Mr.
Williams, it is true, as general manager, shortly after the
12th of April, wrote a letter to Mr. Gonzales asking for the
books which he thought would give them information that
would aid them in operating the new line. The testimony
shows that Mr. Gonzales referred them to Mr. Hamby, who
had been previously general manager or superintendent, and
the testimony does show that Mr. Hamby told them that
the books were out at his house in a box, but they do not
seem to have cared to push the inquiries or take any trouble
to obtain possession of the books. The testimony of Mr.
Gonzales is that all of the visible assets of the company,
like supplies, wood, etc., were actually turned over to them
and no testimony is offered to show to the contrary. I
therefore find that all of the assets other than the boats
themselves and the contracts with the two steamship lines
hereinafter referred to were delivered to the defendants and
actually taken possession of by them, or that they might
have taken possession of the same. This leaves only the
two contracts with the connecting steamship lines at George-
town. The agreement of April 11th refers to them as
existing contracts. Some testimony is offered for the
defense to the effect that they supposed them to be in writ-
ing. There is no testimony tending to show that any repre-
sentation was made that they were in writing. Mr. Gon-
zales' testimony is to the effect that it turned out that the
contracts were ascertainable by the correspondence between
the plaintiff company and the other two steamship lines,
which would have, of course, made them in writing though
not in a formal memorandum. Immediately upon reaching
Georgetown Mr. Williams, who had the authority as gen-

eral manager of the old company so to do, ascertained what was the character of the contract and made arrangements with the representatives of the two steamship lines for operations between Georgetown and Columbia on the basis of the existing contracts. That was assented to by those two steamship lines. No notice was ever given to Mr. Gonzales or the plaintiff corporation that they had failed to obtain satisfactory assignments. They continued to operate under those agreements and .are still operating under the same. Having taken over the business which counsel for the defendant argued in open Court constituted the principal value of the purchase and worked themselves into the patronage of the line, they cannot now be heard to say that they did not, through the powers conferred upon Mr. Williams as general manager to be exercised for their benefit, obtain everything that they desired to obtain. I therefore find that the contracts referred to, although by parol or evidenced by correspondence between the plaintiff company and the two steamship lines, were properly assigned by the assignment of April 11th, and were completely delivered and taken over by the new company, which is still operating under them. My conclusions of law are that by the agreement of April 11th and the subsequent delivery of the things contracted for there was a complete title passed to the defendants. It will be seen by the terms of the agreement of the 11th of April that all parties signing that agreement admitted the title to the boats to be in Gonzales by the sheriff's sale; at any rate, that the previous owner of the boats, the plaintiff corporation, was a party to the contract. It is also seen that the agreement purported to sell by words of the present and that the defendants agreed to purchase by words of the present. The only further stipulation was that the boats and other assets were to be delivered free of lien or encumbrances. Mr. Williams and Mr. Terry are both shown to have been well posted in maritime matters and in the methods of transferring title to such boats. The

law bears them out in their construction that the agreement of April 11th, with the subsequent delivery of the boats, was itself a complete title, subject only to the right of creditors who might libel either or both of the boats. In the case of *Fritz* v. *The Amelie,* 6 Wall. 18, it was held: "A bill of sale is not necessary to transfer title to a vessel. The law of the United States which requires the register to be inserted in the bill of sale on every transfer of a vessel applies only to the character and privileges as an American ship." The unbroken line of authorities on the subject sustain this position. The only question then left for consideration is whether there are any debts still existing upon which libels could be issued against the boats. Mr. Gonzales testified positively that all such that ever existed have been paid in full. Mr. Williams was appointed general manager for the purpose of ascertaining whether any such claims existed. His testimony and that of Mr. Graham tended to show that all such as ever existed have been paid in full. There is no testimony to the contrary. I therefore find that there are no such claims now existing. I conclude that no further evidence of title by way of bill of sale or otherwise is necessary to the complete transfer of the title to the boats and other assets, but the plaintiffs have expressed themselves as willing to execute any bill of sale or other instrument that may be desired by the defendants reasonable and proper to carry out the terms of their agreement.

I further conclude that the defendants are indebted to the plaintiffs in the sum of forty-five hundred and 00-100 ($4,500.00) dollars, together with interest thereon at the legal rate from the 10th day of June, 1913, when the sixty days from the 11th of April, 1913, expired.

It is clear, however, that the purpose of the sale was that the proceeds of sale should be applied to the debts of the corporation according to certain proportions, the first require-

ment being that all claims which might libel the boats were to be paid in full.

It is further adjudged that the plaintiffs recover of the defendants the sum of forty-five hundred and 00-100 ($4,500.00) dollars, with interest from the 10th of June, 1913, amounting in the aggregate to forty-nine hundred and eighty-two and 12-100 ($4,982.12) dollars, together with the costs of this action.

It is, however, ordered that the money so adjudged to be paid shall be paid over into the hands of the master of this Court and that upon the receipt of the same he do proceed to advertise once a week for two successive weeks in a newspaper in the city of Columbia and in the city of Georgetown for all claims against the New York, Columbia and Georgetown Steamship Company, or either of the said boats, to wit, the "City of Columbia" and the "Annie G," to be presented to him, duly proven, by a date to be named by him not later than fifteen days from the date of the insertion of the first of such advertisements, and that he report to the Court all such claims so presented to him for further order of the Court directing the distribution of the fund.

It is further ordered that the master, in the name of the plaintiffs, be directed to execute such bill of sale or other evidence of the transfer of title as may be agreed upon between counsel representing the plaintiffs and the defendants in this cause, and in default of such agreement that either party may apply to this Court for an order settling the form of such instrument. Should the amount adjudged to be paid by the defendants to the plaintiffs not be paid into the hands of the master within ten (10) days from the filing and entry of this decree, the plaintiff shall have leave to issue execution therefor against the property of the defendants, or any of them. The proceeds of such execution when collected to be paid over by the sheriff of Richland county to the master. The provisions as to the payment over of

the funds to the master and the distribution thereof are consented to by the plaintiffs herein as announced by their counsel in open Court.

Defendants appealed on the following exceptions:

You will please take notice that the defendants except to the decree and judgment in the above entitled matter, upon the following grounds, to wit:

1. That his Honor erred in finding and concluding "that there are no such claims (*i. e.,* libel) now existing," and in directing the master for Richland county to advertise for creditors to file their claims with him, and in giving judgment against defendants.

Whereas, he should have found and concluded that the undisputed evidence shows that said steamboats were operated over navigable waters of the United States; that it is admitted by the plaintiffs that at the time the contract was signed libel claims amounting to several thousand dollars were outstanding against the boats; that the State Courts are without jurisdiction to determine whether any of the claims that yet remain unpaid are "libel claims;" and should have refused to decree a specific performance of the contract or to give judgment against defendants because the jurisdiction of the State Court is not sufficiently extensive to determine whether the boats are "free of liabilities and encumbrance of every character," it appearing that no proceedings had been in a Court of competent jurisdiction or that any steps had been taken by which the creditors would be bound.

2. That his Honor erred in decreeing a specific performance of the contract set forth in the complaint by defendants; whereas, he should have held that the contract concerned a chattel and there was no evidence of any sentimental value or other circumstances which would make the remedy at law inadequate, and should have dismissed the complaint for lack of jurisdiction of the subject matter.

3. That his Honor erred in concluding, "I ruled that having gone into the Court upon the method of trial and taken their chances, they could not for the first time after learning of the danger of loss disclaim their action and demand another trial," because the record does not support such a finding, and his Honor should have held· that plaintiffs founded their action in "specific performance" at their own peril, and should have dismissed the action.

4. That his Honor, having held the action to be one for the recovery of money only, erred in passing upon the facts and thereupon giving judgment against defendant; whereas, he should have held that all questions of fact arising therein must be passed upon by a jury, it appearing that defendants had not waived their right to trial by jury as provided in section 326 of the Code of Civil Procedure, and in not referring the questions of facts to a jury upon demand therefor.

5. That his Honor erred in finding that the plaintiff, Gonzales, bought in the boats in his individual name and for his own benefit; whereas, the testimony shows he bid them in as trustee for the company.

6. That his Honor, having found that the plaintiff company still owes debts, is insolvent, ceasing to do business and disposing of all its assets, erred in requiring defendants to perform the contract and in giving judgment against them; whereas, he should have held that plaintiffs, as a condition precedent to requiring a performance of the contract by defendants, were under obligation "to free the boats of liabilities and encumbrances of every character" and to furnish assignments of contracts for the interchange of business with the approval of the Clyde Line and the B. & C. S. S. Company, and as the undisputed evidence shows that the creditors have an 'equitable lien against the boats· and assets of the company, and may follow the same into whosesoever hands they might fall and that the company had no contracts with steamship companies, said defendants should

not be required to pay anything until the boats are freed of encumbrances and liabilities; and inasmuch as these things were not done within 60 days from the date of the contract defendants have been relieved of any obligation to comply with said contract, and are entitled to a return of the $3,000 advanced, and he should have dismissed the complaint and given judgment for the defendants on their counterclaim.

7. That his Honor erred in finding that "the boat, the 'City of Columbia,' was actually delivered to defendants on the 12th of April, 1913," and also in finding that "the 'Annie G' was so delivered to the defendants shortly after the 12th of April;" whereas, he should have held that the boats have never been delivered to the defendant nor was it contemplated by the terms of the agreement signed by the parties that there should be a delivery until they were free of debts and liabilities of every character and satisfactory title made, and these things have not been done.

8. The title to the boats having been put in issue by defendants' denial of plaintiffs' allegation that "Gonzales became the absolute owner thereof," his Honor erred in not passing upon the same and in holding that the undisputed evidence shows that the sales under which the boats were sold were absolutely void, and the said Gonzales acquired no title for the reason that the property offered for sale was not present at the sale or within the view of the auctioneer.

9. That his Honor erred in finding and concluding that Mr. Gonzales was warranted in using the $3,000 advanced him as a part payment on the boats and giving judgment for $4,500 and interest; whereas, he should have found that there was a failure of consideration in that plaintiffs had no contract with the Clyde Line and the B. & C. S. S. Company, and the "Annie G" was worthless, and having elected to bring their action and require a performance of the contract in its entirety rather than an action for damages suffered by the alleged breach of contract it would be unjust

and inequitable to require the performance of the contract in its entirety and should have dismissed the complaint.

10. That his Honor erred: (1) In considering the unsigned agreement of April 10th, and in basing his findings and conclusions in his "fourth finding of facts" upon said agreement; (2) in finding and concluding (a) that the agreements of April 10th and April 11th were to the same effect; (b) that the "agreement of April 11th is ambiguous and needs to be explained;" (c) that the purpose for which Williams was appointed general manager is in doubt, and in considering memorandum of April 10th to ascertain the purpose of his appointment, because, the signed agreement of April 11th clearly shows that his appointment was solely for the benefit of plaintiff; (d) that the title of the boats were in Terry, Guignard and Williams, because the evidence is to the contrary; (e) that the $3,000 advanced was to be used by "defendants" for the payment of the debts to the plaintiff corporation, because it contradicts, varies and alters the terms of the signed contract of April 11th; (f) that defendants are properly seized and possessed of the property plaintiffs agreed to sell defendants, because the undisputed evidence is to the contrary; (g) because he found, and concluded, that "the company and Gonzales" agreed to sell the boats and assets to the defendants; whereas, the undisputed evidence shows that Gonzales claimed to own the boats and the company the remaining assets and neither undertook to bind the other as to their several holdings.

11. That his Honor erred in finding that the appointment of T. C. Williams as general manager of the plaintiff company was for the benefit of the defendants; whereas, he should have held that the agreement of April 11th clearly shows that he was so appointed for the benefit of the plaintiffs pending their efforts to put themselves in a position to comply with the terms of the agreement on their part.

12. That it appearing that the assignment of the contract for the interchange of business was a material inducement

to defendants to enter into the contract for the purchase of the property mentioned therein and that the acquirement of the boats were of secondary consideration, and it having developed that the plaintiff had no contracts which were binding in law, but mere arrangements which may be terminated or changed at the will of the steamship companies, and one of the boats was worthless, his Honor erred in requiring the defendants to pay the full sum of $7,500.

13. That his Honor erred in decreeing a specific performance of the contract by the defendants and in giving judgment against them; whereas, he should have found that the undisputed evidence shows that plaintiffs were unable within 60 days to make satisfactory conveyance of the boats free of encumbrance and liabilities of every character and to procure assignments of alleged contracts for the interchange of business, and should have held that as these things were not done within the 60 days period that they were no longer bound to perform the contract on their part.

14. That his Honor erred in not finding, and concluding, that the $3,000 advanced by defendants was not a payment on account of the purchase price of the boats and contracts, but was a loan to the plaintiff, A. E. Gonzales, individually, to furnish him with funds by which he would be enabled to comply with terms of the contract on his part; and not having been able to make a satisfactory conveyance of the property within 60 days he was not entitled to apply it as a part payment of the purchase price, but should have returned the same to defendants.

15. These defendants except to each and every finding of fact and conclusions of law in said decree contained inconsistent with the foregoing exceptions for the reasons stated therein.

*Mr. Edward L. L. Craig*, for appellant, submits: *The necessity for exercise of admiralty jurisdiction:* Const. U. S., art. III, sec. 2; 191 U. S. 17; Act of Congress (June 23,

C. 373; 36 Stats. 604), 1910; 1 Suppl. 1912. *Fed. Stats. Ann. 352, deprives the State Court of jurisdiction in this action.* Admiralty extends to all navigable streams: 12 How. (U. S.) 443; 40 Fed. 480; 7 L. R. A. 55; 140 U. S. 1; 46 S. W. 24; 10 Wall. 557; 20 Wall. 430. *Libel creditors not bound by decree of State Court:* 191 U. S. 17; 42 Fed. 257; 157 U. S. 286. *This should prevent specific performance by State Court:* Frye, Specific Performance, sec. 862. *General creditors have equitable lien on boats:* 73 S. C. 396; 7 Wall. 392, 409; Code Civil Proc., sec. 168; Pom. Code Rem., secs. 287 and 289; 4 S. C. 508. *Sale by sheriff was void:* 113 N. C. 460; 2 Bail. 291. *Implied warranty:* 80 S. C. 297; 70 S. C. 8; 84 S. C. 266.

*Messrs. Lyles & Lyles,* for respondent, cite: *Maritime liens barred by laches:* 14 Wall. 653; Code of Laws S. C., 1912, sec. 4153, *et seq.;* 21 Wall. 558. *Specific performance:* Rich. Eq. Cas. 238; 48 S. C. 175; 38 Cyc. 558; 55 Eng. Rep., full reprint, 485; 57 *Ib.* 70; 56 *Ib.* 1126; 52 *Ib.* 239; 8 Barb. (N. Y.) 527; 36 Cyc. 565; 17 Ga. 177; 63 Am. Dec. 233; 6 Johns. Ch. 398; 10 Am. Dec. 343; 71 Am. Dec. 732; 51 Am. Dec. 584; 37 Am. Dec. 625; 53 Fed. 85; 3 C. C. A. 443. *Effect of interposing counterclaim:* 43 S. C. 187; 53 S. C. 130; 66 S. C. 459; 69 S. C. 141; 69 S. C. 196; 92 S. C. 389; 10 S. C. 476; 23 S. C. 145; 27 S. C. 235; 25 S. C. 72. *Reference:* 22 S. C. 357; 32 S. C. 585; 24 S. C. 452; 5 S. C. 206; 29 S. C. 413; 58 S. C. 457, 458; 84 S. E. 302.

September 15, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons stated by the Circuit Judge in his Circuit decree, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.